# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **R.H.**

**No. 18-0787** (Webster County 17-JA-63)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father T.H., by counsel Howard J. Blyler, appeals the Circuit Court of Webster County's August 3, 2018, order terminating his parental rights to R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court abused its discretion in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed a petition alleging that petitioner was the potential father to his girlfriend's child, E.S., who tested positive for methamphetamine at birth.[2] The DHHR alleged that, while petitioner and the mother were at the hospital, he was observed leaving the hospital and returning with "a marked difference in demeanor and ability to interact with others." According to the DHHR, it was clear to hospital staff that petitioner was under the influence of something, and he was forbade entrance into the neonatal intensive care unit due to his behavior. The DHHR further alleged that petitioner's other daughter, R.H., was in his legal custody, but in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]During the proceedings, paternity testing established that petitioner was not the father of E.S. Therefore, that child is not at issue in this appeal.

1

the physical custody of her paternal grandmother. The circuit court held a preliminary hearing in July of 2018 and, ultimately, found that imminent danger existed to the children. The circuit court ordered that the DHHR provide petitioner supervised visitation with the children if he tested negative during random drug screening. The DHHR left R.H. in the physical custody of her grandmother.

In August of 2018, the circuit court held an adjudicatory hearing, and the DHHR presented the testimony of two witnesses. Petitioner presented no evidence. The circuit court found that the DHHR established, by clear and convincing evidence, that the respondent mother had used controlled substances during her pregnancy, that those drugs were present in the infant's system at the time of birth, and both respondent parents tested positive for controlled substances subsequent to the infant's birth. Accordingly, the circuit court found that petitioner was an abusing parent. Following the hearing, petitioner moved for an improvement period.

In May of 2018, the DHHR filed a motion to suspend petitioner's visitation alleging that petitioner failed to submit to drug screen when requested. The motion alleged that petitioner was requested to participated in a drug screen and he offered to drive himself and the mother to the drug screening location. However, according to the DHHR, a witness observed petitioner drive through the parking lot of the drug screening location and leave without drug screening.

Later in May of 2018, the circuit court held a dispositional hearing and granted petitioner a post-adjudicatory improvement period. As terms of his improvement period, the circuit court ordered petitioner to remain drug and alcohol free; to abstain from associating with persons possessing, consuming, or under the influence of alcohol or controlled substances; participate in random drug screens; complete parenting classes; and maintain a fit and suitable home. Further, the circuit court set a special condition of the improvement period that petitioner have no contact with the mother.[3] Finally, the circuit court reinstated petitioner's supervised visitations.

Thereafter, the DHHR filed a motion to revoke petitioner's improvement period and to terminate his parental rights. The DHHR alleged that, following the May of 2018 dispositional hearing, petitioner tested positive for Oxycotin and his visitations with the child were suspended. The DHHR filed a second motion in June of 2018 and alleged that petitioner was with the mother in early June of 2018 when she was charged with the misdemeanor offenses of possession of a controlled substance and obstruction of justice. Further, the DHHR alleged that petitioner provided a "negative diluted" sample during a drug screening.

The circuit court held a hearing on the DHHR's motions and heard testimony from petitioner and a law enforcement officer involved in the mother's arrest. This law enforcement officer testified that he witnessed petitioner and the mother together an additional time near the

---

[3]The circuit court terminated the mother's parental rights to E.S. and two other children at the dispositional hearing in May of 2018 after finding that she continued to abuse controlled substances, that she was less than truthful with the circuit court, and that her conditions were not substantially changed from the prior termination of her parental rights to another child. The circuit court also terminated the mother's custodial rights to R.H. on the same grounds.

courthouse on a day that petitioner testified he was working out of town. Following petitioner's testimony that he would test negative for illicit substances, the circuit court ordered him to submit to a drug screen and the results were positive for methamphetamine. Ultimately, the circuit court found that petitioner was less than truthful during his testimony and that he violated the circuit court's order to avoid contact with the mother. Further, the circuit court found that petitioner violated the terms of his improvement period by using controlled substances. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the circumstances of abuse and neglect in the foreseeable future and that it was necessary for the child's welfare to terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights to R.H. by its August 3, 2018, order. Additionally, the circuit court denied petitioner post-termination visitation unless he could prove he had completed substance abuse treatment and that he had not contacted the mother for six months. Petitioner now appeals that order.[4]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court abused its discretion in terminating his parental rights. Petitioner asserts that he was participating in the terms of his post-adjudicatory improvement period such as maintaining gainful employment, maintaining suitable housing, and participating in parenting classes. Further, petitioner argues that he only used methamphetamine once during the proceedings and, by his uncontradicted testimony, only had contact with the mother three times since the improvement period began. We do not find petitioner's arguments persuasive.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no

---

[4]According to the record, R.H.'s mother is deceased. On appeal, the parties assert that the permanency plan for the child is adoption in her current relative foster placement.

3

reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." Here, petitioner continued to use controlled substances well into the proceedings. Petitioner admitted that he used Oxycotin that was not prescribed to him and further lied during his testimony about his recent drug use. Petitioner was asked directly if he would test positive for any controlled substances the day of the final dispositional hearing and he replied, "[n]o, sir." However, petitioner's drug screen was positive for methamphetamines. This positive result is especially concerning because of petitioner's admitted noncompliance with drug screening for three weeks prior to the hearing. Further, petitioner's dishonesty regarding his drug use also undermines his claim that he saw the mother only three times since the improvement period began and supports the circuit court's finding that petitioner was "less than truthful with the [c]ourt." Despite the mother's recent and prior terminations of her parental rights to children due to her substance abuse, petitioner indicated no desire to end their relationship. Although petitioner argues there was "uncontradicted testimony" that he had contact with the mother only three times following the circuit court's "no contact" order, the testimony was provided by petitioner and the circuit court found that he was not credible. Moreover, his admitted contact with the mother was a violation of the circuit court's order and the terms of his post-adjudicatory improvement period. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Thus, the circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected based on petitioner's failure to follow through with these major requirements of his improvement period.

The record supports a finding that the termination of petitioner's parental rights was necessary for the welfare of the child. Petitioner's continued substance abuse and association with the mother would jeopardize the child's welfare if she were returned to petitioner's care. Additionally, we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). The record supports the requisite findings for the circuit court to terminate petitioner's parental rights. Accordingly, we find no abuse of discretion in the circuit court's ruling below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 3, 2018, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  May 24, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison